30 F.3d 141
 74 A.F.T.R.2d 94-5801, 94-2 USTC P 50,399
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Robert A. BROOKS and Carol M. Brooks, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
 No. 92-3295.
 United States Court of Appeals, Tenth Circuit.
 Aug. 3, 1994.
 
 Before LOGAN, SETH, and BARRETT, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 This appeal raises the issue of whether a stock option exercised by taxpayers Robert and Carol Brooks was a qualified stock option within the meaning of 26 U.S.C. 422(b)(1).[2] Pursuant to an employee stock option plan, taxpayers exercised an option to purchase 60,000 shares of stock in Clinton Oil Company.[3] As a result, they reported income on their 1980 return in the amount of the difference between the exercise price and the fair market value of the stock. Taxpayers filed a complaint in the United States District Court for the District of Kansas seeking a tax refund of $210,253 plus interest, because they claim that the 1980 stock purchase was a qualified stock option within the meaning of the Internal Revenue Code and, therefore, that they were not obligated to recognize income in the amount of the difference between the exercise price and the fair market value of the stock.
 
 
 3
 After a bench trial, the district court found that taxpayers were entitled to a refund for 1980 because the stock purchase was a qualified stock option. On appeal, the government raises three issues: 1) whether the judicial supervisor, Honorable Wesley E. Brown, Senior Judge, United States District Court for the District of Kansas, had the authority to approve the stock option plan on behalf of the stockholders for purposes of 26 U.S.C. 422(b)(1); 2) whether approval of the plan by Judge Brown could be established absent a written order or official record of the action; and 3) whether Judge Brown approved the plan on behalf of the stockholders. For the reasons set forth below, we reverse.
 
 Factual Background
 
 4
 Clinton Oil was the subject of a suit for injunctive relief brought by the Securities and Exchange Commission (SEC) on January 15, 1973. The action, presided over by then Chief Judge Wesley E. Brown, sought preliminary and permanent injunctive relief and appointment of a receiver to take control of and conduct the business of Clinton Oil until further order of the court. Because Clinton's major assets were oil and gas concessions subject to cancellation upon appointment of a receiver, Clinton's management and the SEC reached a settlement agreement that, in lieu of appointing a receiver, Judge Brown would act as judicial supervisor. Judge Brown consented to act as judicial supervisor pursuant to the settlement agreement, and on March 8, 1973, the court entered an order approving the settlement (the order).
 
 
 5
 The order set forth Judge Brown's duties and responsibilities as judicial supervisor in connection with the SEC settlement. With the objective of restructuring the management and board of directors under Judge Brown's supervision, the order specifically provided that Judge Brown had the authority to designate a President and Chief Executive Officer from a list of names satisfactory to the SEC. If no recommendation was made, or if Judge Brown chose not to designate anyone recommended, Judge Brown was then authorized to designate a qualified person who was satisfactory to the SEC. The order also gave Judge Brown the specific authority to appoint a certified public accounting (CPA) firm and special counsel, both to be satisfactory to the SEC.[4] Finally, Judge Brown, as judicial supervisor, was specifically given the authority to approve, along with the SEC, the individuals submitted by counsel to serve as directors.
 
 
 6
 As a more general matter, the order anticipated that the newly-appointed president would perform the duties and exercise the powers enumerated in the order, subject to the jurisdiction of the court. Finally, the order stated that:
 
 
 7
 [t]he plaintiff [SEC's] request for appointment of a receiver and relief not afforded by this order as against Clinton Oil Company will be discontinued, wtihout [sic] prejudice, at the time the new Chief Executive Officer and Board of Directors assume their duties. The Court hereby retains jurisdiction with respect to all matters relating to the implementation, accomplishment and enforcement of the acts to be done pursuant to the terms of the settlement agreement, this order and the order of permanent injunction against the Company as made and entered, and to make such further orders as may be necessary and appropriate in connection therewith.
 
 
 8
 Appellant's App. V. III at 479. In accordance with the authority contemplated in the settlement agreement and granted in the order, Judge Brown entered several orders between January 1973 and August 1976 appointing a president and approving his employment agreement, appointing officers and directors, appointing special counsel, and appointing accountants. Judge Brown sought input from the SEC regarding all those matters and his actions were memorialized by formal written orders.
 
 
 9
 On March 18, 1974, Clinton's board of directors adopted three employee benefit plans: a stock option plan, a thrift savings plan, and a profit-sharing plan. Not long after that, the plans were submitted to Judge Brown for his approval. Judge Brown indicated in his deposition testimony that he had no specific recollection of approving the stock option plan, but that if the board of directors had approved it and the SEC had no objection, then he was sure he had approved it.
 
 Procedural Background
 
 10
 After taxpayers filed suit for a tax refund, the parties filed cross motions for summary judgment in the district court. Taxpayers argued that the affidavits and documents attached to their motion supported a finding that Judge Brown had orally approved the stock option plan on behalf of the stockholders in a meeting in his chambers on March 20, 1974. The government maintained that, absent a written order or transcript of the meeting, Judge Brown took no official action to approve the plan, thereby entitling the government to summary judgment. In addition, it argued that, even though it was disputed whether Judge Brown had approved the plan at all, summary judgment was appropriate because Judge Brown's approval could not substitute for stockholder approval as required by 422(b)(1).
 
 
 11
 The district court examined the legislative history of 422 and found that a strict interpretation of the statute, requiring actual stockholder approval, would not further the statutory purpose. To that end, it found that Judge Brown acted as the unanimous voice of the stockholders and that such action was sufficient to satisfy the requirements of 422. Despite its legal conclusions in the taxpayers' favor, the district court granted the government's motion for summary judgment because it found insufficient evidence to demonstrate a genuine issue of fact as to whether Judge Brown actually approved the plan. In so holding, the district court noted that the record contained no evidence of a present recollection by Judge Brown of approving the plan.
 
 
 12
 In response to the district court's order granting summary judgment in favor of the government, taxpayers moved to alter or amend or reconsider the judgment, requesting leave to take Judge Brown's deposition. The government responded that a deposition was unnecessary because the absence of any written order or transcript was dispositive. However, the district court granted taxpayers' motion. Taxpayers then submitted a supplemental memorandum in support of their motion to alter, amend or reconsider judgment, arguing that Judge Brown's deposition, together with the previously submitted affidavits, presented a genuine issue of material fact. The district court granted the motion for reconsideration, finding that a genuine issue of fact existed, and the case was tried to the court.
 
 
 13
 After trial, the district court relied on its previous rulings that Judge Brown had the authority to exercise stockholder approval within the meaning of 422(b)(1) and that he acted as the unanimous voice of the stockholders when he exercised authority normally reserved to stockholders. The court found that Judge Brown did approve the stock option plan and entered judgment for taxpayers.[5]
 
 Discussion
 
 14
 Former section 422(b)(1) of the Internal Revenue Code, 26 U.S.C., states that a stock option granted to an individual in connection with his employment by a corporation is a qualified stock option if "the option is granted pursuant to a plan which ... is approved by the stockholders of the granting corporation within 12 months before or after the date such plan is adopted...." The relevant Treasury Regulation also requires stockholder approval of a stock option plan within twelve months before or after adoption of the plan, if a stock option is to be considered a qualified stock option. 26 C.F.R. 1.422-2(b)(1) (1980). The regulation further states that
 
 
 15
 [t]he approval of the stockholders must comply with all applicable provisions of the corporate charter and bylaws, and the law of the State of incorporation and must represent the express consent of stockholders holding at least a majority of the voting stock of the corporation voting in person or by proxy at a duly held stockholders' meeting.
 
 
 16
 There is no dispute that the Clinton shareholders did not approve the stock option plan adopted by the board of directors within twelve months before or after its adoption. Taxpayers argue, and the district court found, that Judge Brown had the authority as judicial supervisor to approve the plan on behalf of the stockholders and that he did, in fact, do so.
 
 
 17
 The district court found that Judge Brown approved the plan and, in so doing, acted as the unanimous voice of the shareholders. Upon careful examination of the record, we are convinced that the district court's finding to that effect was clearly erroneous. See O'Connor v. R.F. Lafferty & Co., 965 F.2d 893, 901 (10th Cir.1992). Even if Judge Brown had the power to approve the plan on behalf of the shareholders for IRC purposes, and even if such approval could satisfy the requirements of former 422, there is simply no evidence in the record that Judge Brown approved the plan on behalf of the shareholders for Internal Revenue Code (IRC) purposes. In fact, Judge Brown's own deposition testimony implies that he would not have taken such action:
 
 
 18
 Q. Was there ever any discussion at any point in time with regard to the employee stock option plan, a discussion referring to whether it was qualified or non-qualified within the meaning of the Internal Revenue Code?
 
 
 19
 A. No, no, no. I wouldn't have known and I would have turned it over to the lawyers to decide that. They wouldn't--I wouldn't pass on whether it was taxable or not.
 
 
 20
 Q. Do you have a present recollection of discussing with Mr. Volk, Mr. Martin or Mr. Woods that it was necessary for you to approve the employee stock option plan on behalf of the shareholders?
 
 
 21
 A ....if there was a legal basis that required stockholder approval I would have told them to take whatever necessary steps were required....
 
 
 22
 Appellant's App. Vol. I at 119-20. This testimony supports the conclusion that Judge Brown never intended that his general approval of the plan be on behalf of the stockholders and in satisfaction of the stockholder approval requirement of 422.
 
 
 23
 In addition to the above-quoted testimony that appears to contradict the district court's finding, Judge Brown's deposition contains statements supportive of the proposition that Judge Brown's approval of the plan was very general in nature. When considered as a whole, the judge's testimony indicates a general practice of Clinton board members and management running all nature of things by him for his general approval and comment. The Judge would invariably approve the matter if the board had approved it and if there was no objection by the SEC. For instance, in discussing his recollection of the plan, Judge Brown stated:
 
 
 24
 Well, I guess that the board of directors that I said I didn't want them in there, that I would not approve it if they brought it to me [referring to the fact that Judge Brown was opposed to including the directors in any stock option plan]. Otherwise I'm sure that I approved it but I have no recollection of the kind of approval except that it was not to go to the board of directors and that, my approval would have been very frankly if the board of directors thinks this is a good business judgment, I have nothing to, no reason not to approve it.
 
 
 25
 Id. at 117. In response to an affidavit indicating it was not the general practice of the court to record each conference or decision by formal court order, Judge Brown stated:
 
 
 26
 My problem is that I'm not sure they were decisions. If it was a decision I required an order in the file. They were meetings which they would come in and we'd have skull practice, you would call it that way. I think they would come in and ask me what I thought on it and if there was any conflict or any disposition they would tell me that they reported it to the Securities Exchange Commission and I would say, "If there is no conflict, I have no objection to it." Or if it came up with something that I had some feeling in the manner of a suggestion but not to take away the authority of the board.
 
 
 27
 Id. at 113. Also commenting on the court's practice, Judge Brown noted that "if there was a matter in which the Court was making a specific ruling other than merely keeping my board of directors content from worrying, it would have been on the record. I don't do anything that isn't on the record." Id. at 119. Finally, in response to an inquiry as to his recollection of discussion concerning why a stock option plan was desired, Judge Brown replied: "How it was to work, the details, what it was, I don't think they presented it to me. If they had of, I would have told them to just go back and keep it within the law." Id. at 106.
 
 
 28
 Trial testimony of others also speaks to the very general supervisory nature of Judge Brown's actions. Referring to the benefits package (thrift plan, stock option plan and profit sharing plan) presented to Judge Brown for his approval, Robert Martin, counsel for Clinton, testified that the three plans were described to the court and it was explained who was to benefit from the plans and why they were needed, "and Judge Brown said those were fine and he approved them." Appellant's App. Vol. II at 189. When questioned regarding the circumstances surrounding Judge Brown's approval of the stock plan, Martin responded as follows:
 
 
 29
 Q. Was Judge Brown told that shareholder approval was necessary to have a qualified plan?
 
 
 30
 A. No, not that I recall.
 
 
 31
 Q. Did you discuss the tax effects for the executive of a qualified versus nonqualified plan with Judge Brown?
 
 
 32
 A. I didn't. And I don't recall that being discussed in his presence. It was assumed that he knew it, I'm sure was the case.
 
 
 33
 Q. Did you discuss the tax effects of the qualified option versus nonqualified option with respect to the company with Judge Brown at this meeting?
 
 
 34
 A. No.
 
 
 35
 Id. at 196-97. Addressing his recollection of the nature of Judge Brown's approval, Richard Volk, court-appointed president and chief executive officer of Clinton, made this comment: "I guess the best word I would--I could use in terms of running the company then that I felt I had his tacit approval on the documents that I sent to the shareholders, on the plans...." Id. at 288.
 
 
 36
 As further evidence of the nature of Judge Brown's approval, the plan itself contained a clause stating:
 
 
 37
 This Plan, which has been adopted by the Board of Directors on the 18th day of March, 1974, shall be subject to approval by the stockholders of the Company within twelve (12) months after March 18, 1974; however, the disapproval by the shareholders of this Plan or the failure of the shareholders to vote on this Plan shall in no way affect the Plan other than the Plan's qualifications for Internal Revenue purposes.
 
 
 38
 Appellant's App. Vol. III at 390. The very document that Judge Brown approved alluded to the shareholder approval requirement for IRC purposes. Presumably, had Judge Brown's approval been on behalf of the shareholders and in satisfaction of 422, Judge Brown would have suggested that the plan document be adjusted accordingly. The record contains no evidence that Judge Brown even commented on the above-quoted clause; his approval of the plan as presented to him, including that clause, suggests that his general approval was never intended to be a substitute for shareholder approval, as required by 422.
 
 
 39
 After studying the entire record, including Judge Brown's deposition, relevant affidavits, and the trial transcript, we are convinced that Judge Brown's approval of the plan was very general in nature. There is no evidence whatsoever to indicate that Judge Brown approved the stock option plan on behalf of and as the unanimous voice of the shareholders in satisfaction of 422. Accordingly, we REVERSE the judgment of the district court in favor of taxpayers.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Section 422, which was the statute governing qualified stock options during the time period relevant to this action, was added to the Internal Revenue Code of 1954 by Pub.L. No. 88-272, 78 Stat. 64, in 1964. That section was repealed by Pub.L. No. 101-508, 104 Staf. 1388-521, in 1990 and was replaced by the current 422 governing "incentive stock options," formerly 422A, which was added in 1981 by Pub.L. No. 97-34, 95 Stat. 256
 
 
 [3]
 Robert Brooks was employed by Clinton Oil Company, which was the predecessor of Energy Reserves Group, Inc
 
 
 [4]
 Specific duties of the CPA firm and special counsel were enumerated in the order, all with the apparent short-term goal of uncovering and remedying any irregularities regarding: 1) monies paid or loaned to present or former officers, directors, or their relatives; and 2) credit extended by Clinton in connection with the sale of oil and gas interests or the purchase of securities
 
 
 [5]
 The district court originally entered judgment for taxpayers on June 22, 1992. We remanded the case to the district court on June 7, 1994, so that the judgment could be corrected to reflect the amount of the judgment and any interest thereon. The corrected judgment was entered on July 25, 1994